FILED'11 FEB 9 15:09USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

DONNA JENE MEMMOTT,                                              Civil No. 10-3042-CL

                            Plaintiff,                    **REPORT AND RECOMMENDATION**

              v.

ONEWEST BANK, FSB, and REGIONAL
TRUSTEE SERVICES CORPORATION,

                            Defendants.

CLARKE, Magistrate Judge.

        This matter comes before the court on motions to dismiss filed by defendants OneWest

Bank, FSB ("OneWest") (#14) and Regional Trustee Services Corporation ("Regional") (#9), and

Regional's Request for Judicial Notice (#11).  At oral argument on defendants' motions to

dismiss, the parties informed the court that they had reached an agreement that plaintiff would re-

plead one or more of her complaints.  By minute order (#44) dated November 23, 2010, the court

instructed plaintiff to file an Amended Complaint and granted defendants leave to file

supplemental briefing in support of their motions.  Plaintiff's First Amended Complaint (#47)

asserts claims against both OneWest and Regional under the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. § 1692 *et seq*, and an additional claim against OneWest only under the

Page 1 - REPORT AND RECOMMENDATION

Oregon Unfair Debt Collection Practices Act ("OUDCPA"), OR. REV. STAT. § 646.639. (FAC at

5-6, ¶¶ 24-32). Defendants Onewest (#14, 49) and Regional (#9, 50) move to dismiss pursuant

to Federal Rule of Civil Procedure ("FRCP") 12(b)(6), asserting that plaintiff fails to allege facts

sufficient to state a claim for relief. Upon consideration of the motions and the entire file, the

court recommends OneWest's motion to dismiss be granted in part and denied in part, Regional's

motion to dismiss be granted, and plaintiff be granted leave to amend her complaint.

## BACKGROUND

This case concerns two residential deeds of trust secured by plaintiff Donna Jene

Memmott's primary residence, located at 1593 Rogue River Highway in Grants Pass, Oregon

("the property"), which consists of two separate but contiguous parcels of land.[1] (First Am.

Compl. ("FAC"), Dkt. # 47 at 1-2, ¶ 1). Plaintiff financed the property in two separate loans

through IndyMac Bank, FSB ("IndyMac"). (Id.). On August 16, 2004, "Donna Jene Harris and

Gunner F. Harris, signing pro forma to perfect lien only"[2] signed a deed of trust for Parcel 1.

(Req. Judicial Notice ("RJN"), Ex. 1). On August 20, 2004, "Donna Jene Harris" signed a deed

of trust for Parcel 2. (RJN, Ex. 2). Both deeds of trust designate the lender as IndyMac Bank,

FSB ("IndyMac"); Fidelity National Title Insurance Company as trustee; and Mortgage

Electronic Registration Systems, Inc. ("MERS") as beneficiary. (RJN, Ex. 1 & 2).

On March 18, 2009, MERS executed an assignment transferring all beneficial interest in

---

[1] It appears that the property, assessor's parcel number ("APN") of R360521CC, has two "account numbers," 342241 for Parcel 1, and 342242 for Parcel 2.

[2] It appears Mr. Harris is plaintiff's ex-husband, that he remains on title to the property but does not live there, and has assigned all his claims to plaintiff. It is unclear whether references to plaintiff's "husband" in the pleadings refer to Mr. Harris, or whether plaintiff has subsequently re-married.

the deed of trust secured by Parcel 1 to IndyMac; the assignment was recorded March 26 along with an Appointment of Successor Trustee naming Regional as successor trustee. (RJN Ex. 3 at 3-4, Ex. 4 at 1-2). On March 19, MERS executed an assignment transferring all beneficial in the deed of trust secured by Parcel 2 to IndyMac; the assignment was recorded March 30, along with an Appointment of Successor Trustee naming Regional as successor trustee. (RJN Ex. 3 at 1-2, Ex. 4 at 3-4).

OneWest obtained plaintiff's loans through a bill of sale and purchase agreement executed by it and the Federal Deposit Insurance Corporation ("FDIC") as receiver for IndyMac on March 19, 2009, after IndyMac failed. (FAC at 3, ¶ 8; RJN Ex. 5). Plaintiff alleges OneWest acquired servicing rights for her loans at a time when they were alleged to be in default. (FAC at 3, ¶ 8). On March 26, Regional recorded a Notice of Default and Election to Sell for Parcel 1. (RJN, Ex. 6 at 1-3). On March 30, Regional recorded a Notice of Default and Election to Sell for Parcel 2. (RJN, Ex. 6 at 4-6).

Plaintiff fell behind in her mortgage payments due to a battle with cancer, and sought modifications for both her mortgages from OneWest. (FAC at 2, ¶ 1). On July 1, 2009, plaintiff and OneWest entered into a Home Affordable Modification Program ("HAMP") trial modification for Parcel 1. (FAC at 3, ¶¶ 9-10). Plaintiff and OneWest entered into a non-HAMP trial modification for Parcel 2. (Id., ¶ 11). Plaintiff complied fully with the terms of both modifications. (Id., ¶ 12). However, OneWest rejected plaintiff's third payment under the HAMP modification on September 1, 2009, with a letter informing plaintiff that her check for $792.62 did not represent the full amount due. (Id. at 3-4, ¶ 13). Plaintiff spoke with one of OneWest's agent seeking an explanation for why the payment was rejected and was told that the

Page 3 - REPORT AND RECOMMENDATION

information in OneWest's computer system provided no reason for the rejection. (Id. at 4, ¶ 14).

Plaintiff subsequently received a letter dated September 3 stating her modification request could

not be accommodated. (Id., ¶ 15). Plaintiff again called and spoke to one of OneWest's agents

and was informed that Parcel 1 would be sold at foreclosure on October 2, 2009, unless she paid

$8,441.60 plus attorneys' fees and costs, and further advised that the non-HAMP modification for

Parcel 2 would not be made permanent nor would any future payment insufficient to bring the

loan current be accepted. (Id., ¶ 16).

Plaintiff and her husband thereafter repeatedly telephoned and wrote to OneWest

requesting OneWest honor the modification agreements, which OneWest declined to do. (Id., ¶¶

17-18). During this time OneWest reported information regarding the status of plaintiff's loans

to the national credit reporting agencies, which plaintiff alleges falsely represented the number of

months the loans were past due, the amount delinquent on each loan, and other unspecified

information. (Id. at 4-5, ¶ 19). Despite the protests of plaintiff and her husband, Regional

commenced non-judicial foreclosure proceedings on both mortgages in early July, 2009. (Id., ¶¶

20-21; RJN, Ex. 7). Plaintiff filed Chapter 13 bankruptcy for the sole purpose of stopping the

foreclosure. (Id. ¶ 22).

## STANDARD

### REQUEST FOR JUDICIAL NOTICE

In ruling on a motion to dismiss for failure to state a claim, "a court may generally

consider only allegations contained in the pleadings, exhibits attached to the complaint, and

matters properly subject to judicial notice." Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir.

2007). Accordingly , the court may properly take judicial notice of matters in the public record

Page 4 - REPORT AND RECOMMENDATION

on a motion to dismiss, and in doing so "does not convert a Rule 12(b)(6) motion to one for summary judgment." Mack v. South Bay Beer Distrib., 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by* Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 111 (1981); *see also* FED. R. EVID. 201(b) (judicially noticeable facts are those "not subject to reasonable dispute" because they are generally known within the jurisdiction of the court or capable of verification by reliable sources).

## MOTION TO DISMISS

Under FRCP 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See* Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183 (1984). In answering this question, the court must assume that the plaintiffs' allegations are true and must draw all reasonable inferences in the plaintiffs' favor. *See* Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). A complaint need not make "detailed factual allegations," however, "a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). To survive a motion to dismiss under FRCP 12(b)(6), plaintiffs must allege sufficient facts to "raise a right to relief above the speculative level." Id. at 555. That is, plaintiffs must show that their claims not merely conceivable, but plausible. Id. at 570; Ashcroft v. Iqbal, -- U.S. --, --, 129 S.Ct. 1937, 1950 (2009). This plausibility inquiry is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S.Ct. at 1950. The court inquiry is limited to the face of the complaint, id., and matters that may

be judicially noticed, MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).

If the court dismisses the complaint, it must then decide whether to grant leave to amend. Leave to amend should be granted unless it is clear that the complaint cannot possibly be cured by the allegation of other facts. Lucas v. Dep't of Corrs., 66 F.3d 245, 248 (9th Cir. 1995); *see also* Fed. R. Civ. P. 15(a) ("leave [to amend] is to be freely given when justice so requires"). The court must also consider whether granting leave to amend will result in undue prejudice to the opposing party, is sought in bad faith or for a dilatory motive, is futile, or creates undue delay. Lee v. SmithKline Beecham, Inc., 245 F.3d 1048, 1052 (9th Cir. 2001). When amendment would be futile, dismissal may be ordered with prejudice. Oki Semiconductor Co. V. Wells Fargo Bank, Nat. Ass'n, 298 F.3d 768, 772 (9th Cir. 2002) (*citing* Dumas v. Kipp, 90 F.3d 386, 393 (9th Cir. 1996)).

## DISCUSSION

### REQUEST FOR JUDICIAL NOTICE

Defendant Regional requests the court take judicial notice of nine documents as to nine documents, eight of which bear the recording stamp of the Josephine County Official Records: (1) the Deed of Trust for property at 1599 Rogue River Highway in Grants Pass, Oregon, or "Parcel 1," recorded September 3, 2004, as document number 2004-020767, (RJN Ex. 1); (2) the Deed of Trust for property at 1591 Rogue River Highway in Grants Pass, Oregon, or "Parcel 2," recorded September 3, 2004, as document number 2004-020765, (RJN Ex. 2); (3) two Assignments of Deed of Trust:  for Parcel 1 recorded March 26, as document number 2009-005090, and for Parcel 2 recorded March 30, 2009, as document number 2009-005267, (RJN Ex. 3); (3) two Appointments of Successor Trustee:  for Parcel 1 recorded March 26, 2009, as

Page 6 - REPORT AND RECOMMENDATION

document number 2009-005091, and for Parcel 2 recorded March 30, 2009, as document number 2009-005268, (RJN Ex. 4); (4) two Notices of Default and Election to Sell: for Parcel 1 recorded March 26, 2009, as document number 2009-005092, and for Parcel 2 recorded March 30, 2009, as document number 2009-005269, (RJN Ex. 6); and (5) two Notices of Sale Proof of Compliance: for Parcel 1 recorded July 8, 2009, as document number 2009-011230, and for Parcel 2 recorded July 10, 2009, as document number 2009-011429 (RJN Ex. 7).

Finally, Regional requests the court take judicial notice of a purchase agreement between the Federal Deposit Insurance Corporation ("FDIC") as receiver for IndyMac Federal Bank, FSB, and OneWest Bank, FSB, dated March 19, 2009, (RJN Ex. 5). Regional does not attach a full copy of the agreement, however, it alleges the sale is a matter of public knowledge and can be confirmed by the FDIC. The full sale agreement is available online: http://www.fdic.gov/about/freedom/IndyMacLoanSaleAgrmt.pdf; *see also* http://www.fdic.gov/about/freedom/IndyMacMasterPurchaseAgrmt.pdf.

Plaintiff has not filed any objection to any of the documents Regional requests the court take judicial notice of. The court finds that each of the nine documents is a matter of public record and therefore suitable to judicial notice, and moreover are relied upon either expressly or implicitly by the plaintiff's complaint. Therefore the court recommends that Regional's Request for Judicial Notice be GRANTED in its entirety.

**MOTION TO DISMISS**

Plaintiff alleges three claims for relief: against both OneWest and Regional under the FDCPA, and against OneWest only under the OUDCPA.

//

Page 7 - REPORT AND RECOMMENDATION

## I. FDCPA

Plaintiff alleges in Counts One and Two of her FAC that OneWest and Regional, respectively, violated multiple provisions of the FDCPA, "including, but not limited to, 15 U.S.C. §§ 1692e, 1692e(2), 1692e(8), 1692f, 1692f(1) and 1692f(6)." (FAC at 5, ¶ 25, & at 6, ¶ 28). The FAC may be read to allege at least three kinds of violations: (1) communicating credit information known to be false including the character, amount, and legal status of the debt and the fact that the debt was disputed, *see* 15 U.S.C. § 1692e(2)(A), (8); (2) generally engaging in false, deceptive, or misleading practices, *see* §§ 1692e, 1692f; and (3) failing to provide debt validation or to cease collection efforts within thirty days after she disputed the debt, *see* §1692g.

The FDCPA was enacted "to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from using such practices are not competitively disadvantaged, and to promote consistent State action to protect consumers." Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, -- U.S. --, --, 130 S.Ct. 1605, 1608 (2010) (*citing* 15 U.S.C. § 1692(e)). As a threshold matter, the FDCPA applies only to a "debt collector" who engages in practices prohibited by the Act in an attempt to collect a consumer "debt." Id.; Rowe v. Educ. Credit Mgmt. Corp., 559 F.3d 1028, 1031 (9th Cir. 2009) ("The FDCPA regulates the collection of 'debts' by 'debt collectors' by regulating the number and types of contacts a debt collector may make with the debtor.").

Claims under the FDCPA are assessed from the perspective of the "least sophisticated debtor." Swanson v. S. Or. Credit Serv., 869 F.2d 1222, 1225 (9th Cir. 1989). "If the least sophisticated debtor would 'likely be misled' by a communication from a debt collector, the debt collector has violated the Act." Guerrero v. RJM Acquisitions LLC, 499 F.3d 926, 934 (9th Cir.

Page 8 - REPORT AND RECOMMENDATION

2007) (*quoting* Swanson, 869 F.2d at 1225). The standard is an objective one, which "ensure[s] that the FDCPA protects all consumers, the gullible as well as the shrewd . . . the ignorant, the unthinking and the credulous." Clark v. Capital Credit & Collection Servs., 460 F.3d 1162, 1171 (9th Cir. 2006) (internal quotation marks and citations omitted). The least sophisticated debtor is a "lower" standard "than simply examining whether particular language would deceive or mislead a reasonable debtor." Terran v. Kaplan, 109 F.3d 1428, 1431-32 (9th Cir. 1997) (*quoting* Swanson, 869 F.2d at 1227).

OneWest and Regional argue that they are not subject to the FDCPA because (1) they do not fall within the Act's definition of "debt collector," and (2) even if they are deemed to be "debt collectors," plaintiff's FDCPA claims still fail because conducting a non-judicial foreclosure is not the collection of a "debt" within the meaning of the Act. (Regional (#9) Mem. iso Mot. Dismiss at 3-4; (#50) Supp. Mem. iso Mot. Dismiss at 2-3; OneWest (#14) Mot. Dismiss at 3-5; (#49) Supp. Mem. iso Mot. Dismiss at 4-6).

### A.    ONEWEST AND REGIONAL ARE "DEBT COLLECTORS" WITHIN THE MEANING OF THE FDCPA

The FDCPA defines "debt collector" as:

> "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests."

15 U.S.C. § 1692a(6). The Act therefore is not limited in application to collection agencies, but rather "regulates the conduct of 'any person' in 'any business' whose (1) principal purpose is debt collection, or (2) who regularly collects or attempts to collect debts, indirectly or directly,"

Page 9 - REPORT AND RECOMMENDATION

Romine v. Diversified Collection Servs., Inc., 155 F.3d 1142, 1146 (9th Cir. 1998) (*citing* 15

U.S.C. § 1692a(6)). Possession of the debt or personal financial benefit from the satisfaction of

the debt is not necessary for liability as a "debt collector" to attach under the FDCPA. Id. (*citing*

Heintz v. Jenkins, 514 U.S. 291, 297, 115 S. Ct. 1489 (1995) (attorneys litigating cases on behalf

of clients may fall within the FDCPA definition of "debt collector" because "litigating . . . seems

simply one way of collecting a debt.").

Courts holding that the FDCPA does not apply to mortgagees and their assignees,

mortgage servicing companies, or trustee fiduciaries, generally cite to a specific portion of the

legislative history of the FDCPA which states:

> "[T]he committee does not intend the definition to cover *the activities of trust*
> *departments, escrow companies, or other bona fide fiduciaries;* the collection of
> debts, such as mortgages and student loans, by persons who originated such loans;
> *mortgage service companies and others who service outstanding debts for others,*
> *so long as the debts were not in default when taken for servicing;* and the
> collection of debts owed to a creditor when the collector is holding the receivable
> account as collateral for commercial credit extended to the creditor."

S. REP. No. 95-382, at 3-4 (1977) *reprinted in* 1977 U.S.C.C.A.N. 1695, 1977 WL 16047

(emphasis added). The legislature accounted for this concern by creating a number of exceptions

from the FDCPA's definition of "debt collector," including:

> "any person collecting or attempting to collect any debt owed or due or asserted to
> be owed or due another to the extent such activity (I) is *incidental to* a bona fide
> fiduciary obligation or a bona fide escrow arrangement; . . . (iii) concerns a debt
> which *was not in default at the time it was obtained* by such person; . . ."

15 U.S.C. § 1692a(6)(F) (emphasis added).

There is no controlling Ninth Circuit authority addressing whether and when the FDCPA

applies to conduct by mortgage servicers or foreclosure trustees. However, other Circuit Courts

of Appeal have generally rejected the argument that such defendants are categorically exempt

Page 10 - REPORT AND RECOMMENDATION

from the provisions of the FDCPA, finding instead that such defendants generally fall within the ambit of the FDCPA unless they are a "creditor" as defined by the Act or otherwise fall within one of the exceptions created by § 1692(a)(6)(F). *See e.g.* Schlosser v. Fairbanks Capital Corp., 323 F.3d 534, 536 (7th Cir. 2003) ("the Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not"); Wilson v. Draper & Goldberg, PLLC, 443 F.3d 373, 378 (4th Cir. 2006) (rejecting the argument that the enforcement of a security interest is not governed by the FDCPA outside of § 1692f(6) and finding that "this provision is not an exception to the definition of debt collector, it is an inclusion to the term"); Kaltenbach v. Richards, 464 F.3d 524, 528-29 (5th Cir. 2006) (holding that a party satisfying the definition of "debt collector" under § 1692a(6) is a debt collector for the purpose of the entire FDCPA, "even when enforcing security interests"); *but see* Warren v. Countrywide Home Loans, Inc., 342 Fed.Appx. 458, 460, 2009 WL 2477764, * 2 (11th Cir. 2009) ( § 1692f(b) "reasonably suggests" that such a person in the business of enforcing security interests "is not a debt collector for purposes of the other sections of the Act.").

Since neither OneWest nor Regional argues that it is a creditor, both OneWest and Regional must show that they falls within one of the exceptions created by § 1692a(6)(F) in order to be exempt from the FDCPA.

### 1. OneWest

Plaintiff alleges that both her loans originated with IndyMac. OneWest did not originate plaintiff's loans, therefore the exception created by § 1692a(6)(F)(ii) does not apply to OneWest.

OneWest argues it is not subject to the FDCPA because, as alleged by plaintiff, it is a mortgage servicer. This argument fails. § 1692a(6)(F)(iii) creates an exception for debts which

are not in default at the time they are obtained. Plaintiff alleges that OneWest obtained her loans *when they were alleged to be in default*, therefore § 1692a(6)(F)(iii) does not apply to OneWest. *See* Kellers v. Ocwen Loan Serv., LLC, Civ. No. 09-6076-TC, 2009 WL 2899813, * 2 (D. Or. Sept. 9, 2009) (mortgage servicer which clearly was a loan servicer *before* the mortgage went into default exempt from FDCPA under exception created by § 1692a(6)(F)(iii)); *see also* Bailey v. Sec. Nat'l Serv. Corp., 154 F.3d 384, 388 (7th Cir. 1998) (mortgage servicing company attempting to collect on a forbearance agreement acquired from HUD held exempt from FDCPA under § 1692a(6)(F)(iii) because although the original mortgage had been in default, it had been replaced by the forbearance agreement, which was current).

Because OneWest does not fall within any exception created by § 1692a(6)(F), it falls within the FDCPA's definition of "debt collector" and is subject to the substantive provisions of the Act.

### 2. Regional

The exception created by § 1692a(6)(F)(I) excludes "fiduciaries whose sole or primary function is to collect a debt on behalf of the entity to whom the fiduciary obligation is owed" by requiring that a defendant's collection activity be "incidental to" its fiduciary obligations. Rowe, 559 F.3d at 1034 (*citing* Wilson, 443 F.3d at 377 (§ 1692a(6)(F)(I) not applicable to law firm hired solely for the purpose of conducting foreclosure)). To fall within this exception, Regional must show that (1) it owes a fiduciary obligation to OneWest, and (2) any collection activity it performed was "incidental to" this fiduciary obligation.

### a. Regional owed OneWest a fiduciary obligation

By statute, the only duties imposed upon the trustee of a deed of trust are (1) upon default

Page 12 - REPORT AND RECOMMENDATION

to undertake the steps necessary to foreclose the deed of trust, OR. REV. STAT. §§ 86.740 -

86.755; or (2) upon satisfaction of the secured debt to reconvey the deed of trust, OR. REV. STAT.

§ 86.720(1). Oregon courts have in the past held that a trustee under a deed of trust acts in a

fiduciary capacity. *See* Wright v. Assocs. Fin. Servs., 59 Or. App. 688, 695, 651 P.2d 1368

(1982) (trustee owed duty of good faith and due diligence to trust deed grantor). Subsequent

revisions to the underlying statute have effectively abrogated this holding as it pertains to trust

deed grantors. *See* OR. REV. STAT. § 86.790(7) (2009) ("The trustee or successor trustee shall

have no fiduciary duty or fiduciary obligation to the grantor or other persons having an interest in

the property subject to the trust deed."). Whether the trustee owes fiduciary duties or obligations

to the trust deed beneficiary is unclear.

Oregon courts have not squarely addressed this issue. *But see* Outback Properties. LLC v.

v. Johnson, 225 Or. App. 366, 370, 201 P.3d 246 (2009) (affirming grant of summary judgment

in favor of trust deed trustee defendant who failed to warn plaintiff of defect in foreclosure

proceeding; even though plaintiff was also trust deed beneficiary, defendant owed no duty to

protect plaintiff's interest as purchaser). Other courts faced with this question have determined

that the trustee under a deed of trust is not a "true" trustee, owes no fiduciary duties, and instead

acts only as a common agent for the trustor and beneficiary. *See, e.g.*, Sipe v. Countrywide Bank,

690 F.Supp.2d 1141, 1153 (E.D. Cal. 2010); Stephens. Partain & Cunningham v. Hollis, 196

Cal.App.3d 948, 955, 242 Cal. Rptr. 251 (1987) ("Just as a panda is not an ordinary bear, a

trustee of a deed of trust is not an ordinary trustee"). Because this issue is not ultimately

determinative of the outcome in this case, this court assumes, without deciding, that the trustee of

a deed of trust owes the beneficiary some duty or obligation sufficient to satisfy the "fiduciary

duty" requirement of § 1692a(6)(F)(I).

### b. Regional's conduct was central to its fiduciary obligation to OneWest

Plaintiff alleges Regional initiated the non-judicial foreclosure and continuing to pursue these proceedings even after she informed Regional that she was current on the loan modifications. The actions of a trust deed trustee in carrying out the foreclosure are central to its fiduciary obligation. Wilson, 443 F.3d at 377-78. Therefore, to the extent that a trustee uses or attempts to use the foreclosure process to collect a debt, it cannot benefit from the exception created by § 1692a(6)(F)(I). Id. Because the issue of whether actions connected to a foreclosure proceeding are or can be "debt collection" activity within the meaning of the FDCPA is determinative of plaintiff's claims against both OneWest and Regional, the court addresses that issue separately, below.

#### Conclusion

Neither OneWest nor Regional fall within any exception to the definition of "debt collector" under the FDCPA, and may therefore be held accountable for any conduct that violates the Act's substantive provisions.

### B.    WHETHER ONEWEST OR REGIONAL ENGAGED IN PROHIBITED CONDUCT

Both OneWest and Regional rely on an earlier decision issued by this district for the proposition that "the activity of foreclosing on the property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA." Hulse v. Ocwen Fed. Bank, FSB, 195 F.Supp.2d 1188, 1204 (D. Or. 2002). This statement has been prolifically cited by district courts within the Ninth Circuit and in other circuits as the reason why a plaintiff's claims under the

Page 14 - REPORT AND RECOMMENDATION

FDCPA fail. However, Hulse does not create a blanket exemption for all conduct by a lender or foreclosure trustee once non-judicial foreclosure proceedings have been initiated. Rather, Hulse stands for the more limited proposition that conduct *actually necessary* to effectuate non-judicial foreclosure is not debt collection activity and therefore not subject to the FDCPA.

### Hulse v. Ocwen Loan Servicing

The plaintiffs in Hulse alleged that the defendant lender violated the FDCPA by contacting them directly regarding their delinquent mortgage after learning they were represented by counsel. Hulse, 195 F.Supp.2d at 1202. After finding that the defendant lender fell within the FDCPA's "originator" exception to the definition of "debt collector" and therefore was not subject to the FDCPA, the court went on to note that the plaintiff's FDCPA claim incorporated allegations that the defendant "wrongfully attempted to foreclose on plaintiffs' property by causing a trustee notice of sale to be filed" with the county. Id. at 1202-03. The court determined that the plaintiffs were arguing that initiating the foreclosure was wrongful because the defendant lender did not at that time have a beneficial interest in the trust deed due to an invalid assignment, and therefore was attempting to collect a debt it was not owed. Id.

Relying on a case from the Northern District of West Virginia, the court concluded that the act of causing a trustee's notice of sale to be filed could not support an FDCPA claim. Id. at 1203-04 (*citing* Heinemann v. Jim Walter Homes, Inc., 47 F.Supp.2d 716, 722 (N.D. W.Va. 1998) (holding that "publication of the notice of sale and the final trustees sale" of a mortgaged property was not collection of a debt and thus not within the scope of the FDCPA)). The court followed Heinemann to conclude that:

> "[f]oreclosing on a trust deed is distinct from the collection of the obligation to pay money. . . . Payment of funds is not the object of the foreclosure action.

Page 15 - REPORT AND RECOMMENDATION

Rather the lender is foreclosing its interest in the property.

An important point here is that with a trust deed, the trustee possesses the power of sale which may be exercised after a breach of the obligation for which the transfer in trust of the interest in real property is security. OR. REV. STAT. § 86.710. Foreclosure by the trustee is not the enforcement of the obligation because it is not an attempt to collect funds from the debtor.

Thus, I agree with the conclusion in Heinemann that the activity of foreclosing on the property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA. *Accordingly, any actions taken by [the defendant lender] in pursuit of the actual foreclosure may not be challenged as FDCPA violations.*"

Id. at 1204 (emphasis added).

The precise holding in Hulse is that any action taken in pursuit of actual foreclosure may not be challenged as a violation of the FDCPA. However, Hulse is frequently cited as holding that the activity of foreclosing is not the collection of a debt without any concurrent analysis of the defendant's specific conduct. Cited in this manner, Hulse is misinterpreted as holding that conduct connected in any way with foreclosure proceedings is *per se* not debt collection activity. Two Circuit Courts of Appeal have reviewed Hulse where the holding has been misrepresented in this way, and both rejected Hulse as being overly broad. However, when the narrow and specific holding is correctly identified, Hulse is clearly in harmony with the decisions of these Courts of Appeal.

### The Fifth Circuit

First, in Kaltenbach v. Richards, the defendant, an attorney hired to conduct an "executory process foreclosure"[3] on a loan secured by plaintiff's mobile home, argued he was enforcing a security interest and therefore not a debt collector under the FDCPA. 464 F.3d 524,

---

[3] A process similar to non-judicial foreclosure. *See, e.g.*, Myers v. U.S., 647 F.2d 591, 598 (5th Cir. 1981) (holding that "Louisiana's executory process does not constitute a 'judicial proceeding' within the meaning of" the Federal Tax Lien Act, 26 U.S.C. § 7425(a)).

526 (5th Cir. 2006). The Fifth Circuit reversed the district court's grant of summary judgment in favor of the defendant and remanded for a determination of whether the defendant fell within the FDCPA's definition of a "debt collector," holding that (1) whether a party is a "debt collector" under the FDCPA is determined by their general, not specific, debt collection activities; (2) this inquiry is separate from the question of whether the party's specific conduct qualifies as the collection of a debt, thereby requiring them to comply with other specific substantive requirements of the FDCPA; and (3) a party satisfying the definition of "debt collector" under § 1692a(6) is a debt collector for the purpose of the entire FDCPA, "even when enforcing security interests." Id. at 529. In so concluding, the Fifth Circuit discussed and rejected Hulse as authority for the proposition that the enforcement of a security interest is not governed by the FDCPA outside of § 1692f(6), finding this determination to be inconsistent with other provisions of the FDCPA and specifically noting that § 1692i(a)(1) is directed at persons enforcing security interests. Id. at 528.

The Fifth Circuit revisited the holding in Kaltenbach and the issue of whether non-judicial foreclosure is or can be debt collection within the meaning of the FDCPA in a subsequent unpublished case. There, the issue was whether a District Court erred by instructing the jury that "[o]rdinarily, the mere activity of foreclosing . . . under a deed of trust is not the collection of a debt within the meaning of the [FDCPA] unless other actions are taken beyond those necessary to foreclose under the deed of trust, and were taken in an effort to collect a debt." Brown v. Morris, 243 Fed.Appx. 31, 36, 2007 WL 1879392, * 4 (5th Cir. 2007). The Fifth Circuit declined to find error in the instruction, holding that a non-judicial foreclosure is not *per se* debt collection under the FDCPA, and citing Kaltenbach as at least "implicitly" recognizing

the distinction between debt collection and the enforcement of a security interest under the FDCPA.  Id. at 35.

Kaltenbach and Brown, read together, hold that where a plaintiff alleges violations of the FDCPA arising out of a non-judicial foreclosure, the determinative issue is whether the defendant engages in specific conduct beyond that actually necessary to effectuate the foreclosure.  This is consistent with the holding in Hulse, which holds only that actions taken in pursuit of the actual foreclosure may not form the basis of an FDCPA violation.

**The Fourth Circuit**

The Fourth Circuit has also examined Hulse.  In Wilson v. Draper & Goldberg, the defendants, a law firm and one of its lawyers, were hired by a mortgagee to foreclose on the plaintiff's property and argued that the foreclosure was a termination of the plaintiff's equity of redemption relating to the property rather than the enforcement of an obligation to pay money, relying in part on Hulse.  443 F.3d 373, 374-76 (4th Cir. 2006).  The Fourth Circuit reversed the district court's grant of summary judgment in favor of the defendants, holding that (1) the defendants foreclosure action was an attempt to collect a debt, (2) the defendants' status as foreclosure trustees did not exclude them from the definition of "debt collector" under 15 U.S.C. § 1692a(6)(F)(I); and (3) the defendants could still be "debt collectors" even if they were also enforcing a security interest.  Id. at 378-79.

The Fourth Circuit specifically considered and rejected the argument that the plaintiff's mortgage ceased to be a "debt" after the foreclosure proceedings commenced, finding that to hold otherwise would create "an enormous loophole" in the FDCPA that would immunize any debt secured by an interest in real property from the provisions of the FDCPA if foreclosure

Page 18 - REPORT AND RECOMMENDATION

proceedings were used to collect that debt.  Id. at 376 (*citing* Piper v. Portnoff Law Assocs., 396

F.3d 227, 234 (3rd Cir. 2005) (statute providing a lien to secure the plaintiff's debt did not change

the nature of the debt nor turn the defendant's communications into something other than an

effort to collect a debt).  The Fourth Circuit scrutinized the defendant's specific conduct, which

included sending a letter to the plaintiff containing a specific request to reinstate her mortgage

after the foreclosure proceedings were initiated, and found that this communication was separate

and apart from the foreclosure proceedings and constituted an attempt to collect a debt within the

meaning of the FDCPA.  Id. at 376-77.

Wilson has been distinguished by other district courts within the Ninth Circuit on the

basis that under the applicable state law, no deficiency judgment is allowed where a secured

interest holder pursues non-judicial foreclosure. *See, e.g.,* Goodwin v. Cal. Reconveyance Co.,

Civ. No. S-09-3191 MCE GGH PS, 2010 WL 3341831, *6 (E.D. Cal. Aug. 23, 2010) (under

California law, lender/trustee may not seek a deficiency judgment when foreclosing on property

through non-judicial foreclosure and sale); Usher v. Chase Home Fin. LLC, Civ. No. S-10-2202

MCE GGH PS, 2010 WL 4008496. * 4 (E.D. Cal. Oct. 12, 2010) (same); *c.f.* McDaniel v. South

& Assocs., 325 F.Supp.2d 1210, 1217 (D. Kan. 2004) (distinguishing Hulse and holding that

where the defendant sought judgment on the note as part of a judicial foreclosure proceeding, the

foreclosure proceeding amounted to debt collection activity).

Under Oregon law, when a debtor defaults on a deed of trust, the holder of the security

interest may pursue one of three remedies:  (1) sue on the note and obtain a personal judgment

against the debtor in the full amount of the debt; (2) pursue non-judicial foreclosure through the

power of sale under the trust deed or mortgage; or (3) pursue judicial foreclosure.  These

remedies are mutually exclusive.  If the security interest holder elects to pursue judicial or non-judicial foreclosure on a purchase money or residential deed of trust, it may not thereafter sue on the note to obtain a deficiency judgment against the debtor.  OR. REV. STAT. § 86.770(2). Likewise, if the security interest holder elects to sue on the note and obtain a personal judgment against the debtor, it may not thereafter pursue either non-judicial foreclosure, OR. REV. STAT. § 86.753(4), or judicial foreclosure, In re Daraee, 279 B.R. 853, 858 (Bankr. D. Or. 2002).

However, nothing prohibits a security interest holder from abandoning one remedy to pursue another.  Oregon courts have specifically held that "the doctrine of election of remedies applies only when the possibility of double recovery exists," which, where non-judicial foreclosure of a trust deed is elected, does not exist until after the foreclosure sale is completed. Barclaysamerican/Financial, Inc. v. Boone, 96 Or. App. 635, 638, 773 P.2d 1338 (1989) (filing notice of default and election to sell with county clerk did not constitute irrevocable statutory remedy election).  A secured interest holder may, therefore, abandon a non-judicial foreclosure at any time prior to the foreclosure sale and elect instead to sue on the note and obtain a personal judgment against the debtor, resulting in an obligation by the mortgagor to pay money.  There is one additional consideration:  the mortgagor's statutory right to cure default.  When a secured interest holder elects to pursue a non-judicial foreclosure, the defaulting mortgagor has a statutory right to cure the default at any time prior to five days before the foreclosure sale, thereby reinstating the loan under its original terms.  OR. REV. STAT. § 86.753(1).  In light of these Oregon statutes and cases, this court finds that plaintiff's loans remained debts even after OneWest elected to pursue non-judicial foreclosure.

//

Page 20 - REPORT AND RECOMMENDATION

## Conclusion

The determinative issue in <u>Hulse</u> as in <u>Wilson</u>, <u>Kaltenbach</u>, and <u>Brown</u>, was not whether the defendant had initiated or was pursuing foreclosure proceedings, but rather whether the defendant had engaged in conduct beyond that actually necessary to effectuate the foreclosure. In the absence of controlling Ninth Circuit precedent to the contrary, this court finds the collective reasoning of these four cases to be well reasoned and an appropriate framework for deciding whether plaintiff's claims under the FDCPA can withstand defendants' motions to dismiss. To survive, plaintiff must allege sufficient facts to demonstrate that OneWest and Regional engaged in conduct beyond that actually necessary to foreclose on her loans.

### 1. OneWest

Plaintiff alleges that (1) OneWest wrongfully rejected her third payment on the HAMP modification for Parcel 1; (2) that after rejecting this payment OneWest began charging her late fees; (3) that OneWest wrongfully refused to honor either the HAMP modification for Parcel 1 or the non-HAMP modification for Parcel 2; (4) that OneWest reported false information to the national credit reporting agencies about the status of her loans, including the number of months past due and amounts past due; and (5) OneWest failed to report to the national credit reporting agencies that plaintiff had disputed a portion of the debts allegedly owed. Plaintiff cites generally to § 1692e, which governs false and misleading representations, and specifically to § 1692e(2), (8), and (10); she also cites generally to § 1692f, which governs unfair practices, and specifically to § 1692f(1) and(6).

### a. Violations arising under § 1692e

Subsection (2)(A) of § 1692e prohibits the false representation of the character, amount,

or legal status of any debt. Subsection (8) prohibits the actual or threatened communication of credit information which is known or should be known to be false to any person, including the failure to communicate that a disputed debt is disputed. Subsection (10) prohibits, in relevant part, "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt." Plaintiff has alleged that OneWest reported false information to national credit reporting agencies about her loans, including the number of months past due, the amounts past due, and that she disputed portions of those amounts. Reporting credit information to the national credit bureaus is not an act actually necessary to effectuate the foreclosure process. It is, however, an act connected to debt collection. *See, e.g.*, Yulaeva v. Greenpoint Mortg. Funding. Inc., No. CIV. S-09-1504 LKK/KJM, 2009 WL 2880393, * 10 (E.D. Cal. Sept. 3, 2009) (declining to grant motion to dismiss plaintiffs claims for violations of the FDCPA and state law equivalent based on defendant's reporting of credit information). OneWest has offered no argument and cited no authority to the contrary. Therefore, OneWest's motion to dismiss plaintiff's claims under § 1692e and its subsections should be DENIED.

### b. Violations arising under § 1692f

Subsection (1) of § 1692f prohibits the collection of any interest, fee, charge, or expense incidental to the principal obligation unless such amount is expressly authorized by the agreement creating the debt or permitted by law. Subsection (6) prohibits "[t]aking or threatening to take any non-judicial action to effect dispossession or disablement of property" if there is no present right to possess the property, no present intent to take possession of the property, or the property is exempt by law from dispossession or disablement. Plaintiff appears to base her claim under this subsection on OneWest's (1) rejection of her third payment under the

Page 22 - REPORT AND RECOMMENDATION

HAMP modification for the loan secured by Parcel 1; (2) subsequent refusal to make permanent either the HAMP or non-HAMP modifications; (3) addition of late charges and attorney fees to the amount required to bring her loan current and cure the default; and (4) initiation of non-judicial foreclosure proceedings.

The deeds of trust for Parcel 1 and Parcel 2 signed by plaintiff contain identical "Uniform Covenants" which provide, in relevant part, that the "Lender" may accept partial payments without waiving its right to refuse and return any partial payment in the future that is insufficient to bring the loan current. (RJN Ex. 1 at 4, ¶ 1; Ex. 2 at 4, ¶ 1). The covenants clearly contemplate late charges for untimely payments and describes how payments will be applied in the payments are insufficient to cover late charges. (RJN Ex. 1 at 4, ¶ 2; Ex. 2 at 4, ¶ 2). Moreover, the covenants expressly authorize the assessment of attorney's fees, to be added to the debt owed by the borrower, in the event that such fees are necessarily incurred to secure the interest of the Lender due to the Borrower's default. (RJN Ex. 1 at 7-8, ¶ 9 & at 10, ¶ 14; Ex. 2 at 7-8, ¶ 9 & at 10, ¶ 14). The covenants further provide that "any forbearance by the lender in exercising any right or remedy . . . shall not be a waiver of or preclude the exercise of any right or remedy." (RJN Ex. 1 at 10, ¶ 12; Ex. 2 at 10, ¶ 12). This same subsection provides that any "[e]xtension of the time for payment or modification of amortization of the sums secured" by the deed of trust "shall not operate to release the liability" of the borrower. (Id.).

Under the express terms of the deeds of trust, plaintiff's claims under § 1692f and the cited subsections fail. No subsection of § 1692f makes OneWest's failure to make plaintiff's modifications permanent actionable. The assessment of late charges and attorney fees was clearly contemplated by the parties and agreed to by plaintiff. OneWest retained the right accept

Page 23 - REPORT AND RECOMMENDATION

or reject partial payments notwithstanding any forbearance or modification, as well as the right to

proceed with foreclosure proceedings notwithstanding any forbearance or modification.

Therefore, OneWest's motion to dismiss plaintiff's claims under § 1692f should be GRANTED.

### 2. Regional

Plaintiff invokes the same sections and subsections of the FDCPA as the basis for her

claim against Regional as those alleged against OneWest, described above. However, the only

factual allegation plaintiff makes is that she "protested" the non-judicial foreclosure proceeding

commenced by Regional, and that Regional continued to pursue the non-judicial foreclosure

despite these protests.

Plaintiff's claim that she "protested" the foreclosure proceedings initiated by Regional is

most easily understood as an allegation that she requested, pursuant to § 1692g, that Regional

verity the debt it sought to foreclose on. However, it appears that plaintiff has abandoned her

claim under § 1692g:  she specifically invoked this provision in her original Complaint, but fails

to re-allege it in her FAC.  Therefore, the only discernable basis for plaintiff's claim against

Regional arises out of the mailing of the notice of default.

Regional did not engage in debt collection activity by mailing the notice of default to

plaintiff.  The notice was contemplated by the parties and agreed to by plaintiff, as demonstrated

by the "Non-Uniform Covenants" set out in the deeds of trust. (RJN Ex. 1 at 13, ¶ 22; Ex. 2 at

13, ¶ 22).  Regional was required by statute to give notice of the pending foreclosure sale of the

property, therefore under Hulse mailing the notice was an action taken in actual pursuit of the

foreclosure.  OR. REV. STAT. §§ 86.737, 86.740.  Furthermore, the Ninth Circuit has held in

unpublished opinions that the defendant does not violate the FDCPA by mailing a notice of

default to the defaulting debtor. *See* Kazen v. Premier Mortg. Servs. of Wash., Inc., 78

Fed.Appx. 586, 587, 2003 WL 22359610, * 1 (9th Cir. 2003) (plaintiff failed to state a claim

under the FDCPA where the lender took no action to collect the debt after it mailed the initial

"Notice of Default"); Santoro v. CTC Foreclosure Serv. Corp., 12 Fed.Appx. 476, 480, 2001 WL

275008 (9th Cir. 2001) ("statutorily required notice of [a] pending foreclosure sale" did not

violate the FDCPA where the notice did not seek to collect the debt); *see also* Maynard v.

Cannon, No. 08-4181, 2010 WL 4487113, at * 5 (10th Cir. Nov. 10, 2010) (law firm hired to

conduct non-judicial foreclosure did not violate the FDCPA by mailing a copy of the notice of

default to the plaintiff along with copy of FDCPA notice stating "this is an attempt to collect a

debt" as the notice was "simply the first step in the foreclosure process).

Plaintiff has failed to allege any conduct by Regional beyond that necessary to actually

effectuate the foreclosure process, therefore Regional's motion to dismiss should be GRANTED.

## II. OUDCPA

Plaintiff alleges in Count Three a claim against OneWest only under the Oregon Uniform

Debt Collection Practices Act, or OUDCPA.  The OUDCPA prohibits debt collectors from

certain abusive and coercive methods to pressure debtors to pay debts that exist or are alleged to

exist.  OR. REV. STAT. § 646.639 *et seq*; Porter v. Hill, 314 Or. 86, 92, 838 P.2d 45 (1992).

Plaintiff alleges claims under the OUDCPA generally, "including, but not limited to" violations

of §646.639(2)(k), (m), and (n).

### A.   §646.639(2)(k)

Subsection (2)(k) of the OUDCPA prohibits attempting or threatening "to enforce a right

or remedy with knowledge or reason to know that the right or remedy does not exist."  The

OUDCPA defines "debt" as "any obligation or *alleged* obligation." OR. REV. STAT. §646.639(1)(e) (emphasis added). In light of this definition, Oregon courts interpreting subsection (2)(k) have held that it does not prohibit actually filing a legal action "merely because all or part of the alleged debt does not exist." Porter, 314 Or. at 95. Moreover, this subsection does not prohibit threatening to file a lawsuit where the debtor "ha[s] a right to file that action," even if part of the underlying debt has been paid or otherwise satisfied. Pro Car Care v. Johnson, 201 Or. App. 250, 258, 118 P.3d 815 (2005).

Plaintiff appears to base her claim under this provision of the OUDCPA on OneWest's election to pursue non-judicial foreclosure despite its alleged obligation to make the HAMP and non-HAMP modifications on her loans permanent. This claim fails for the same reason that her claim under the FDCPA's § 1692f fails:  the covenants set out in the deeds of trust preserved OneWest's right to pursue foreclosure on plaintiff's default notwithstanding any forbearance, extension of time for payment, or modification of amortization of the loan secured by the deed of trust. (RJN Ex. 1 at 10, ¶ 12; Ex. 2 at 10, ¶ 12). Therefore, OneWest's motion to dismiss plaintiff's claim under OR. REV. STAT. § 646.639(2)(k) should be GRANTED.

**B.      §646.639(2)(m) & (n)**

Subsection (2)(m) of the OUDCPA prohibits the representation "that an existing debt may be increased by the addition of attorney fees, investigation fees or any other fees or charges when such fees or charges may not legally be added to the existing debt." Similarly, subsection (2)(n) prohibits collecting or attempting to collect "any interest or other charges or fees in excess of the actual debt unless they are expressly authorized by the agreement creating the debt or expressly allowed by law." Plaintiff's claims under these subsections appear to be based on OneWest's

assessment of late charges and attorney fees, and fail for the same reasons that her claim under

the FDCPA's § 1692f fails:  the assessment of late charges and attorney fees was clearly

contemplated by the parties and agreed to by plaintiff, as set out in the deed of trust covenants

described above.  Therefore, OneWest's motion to dismiss plaintiff's claim under OR. REV. STAT.

§ 646.639(2)(m) & (n) should be GRANTED.

### III. PLAINTIFF'S MOTION TO AMEND

In her Statement Regarding Amended Complaint (#48) plaintiff states she continues to

seek leave to add common law claims against OneWest as first requested in footnote 3 in her

Response (#25) to OneWest's motion to dismiss (#14).  She believed these claims to be outside

the scope of the court's order (#44) as the parties had reached no agreement regarding them and

therefore did not include them in her First Amended Complaint.

It is clear from oral argument and the parties' briefing that at least one claim contemplated

by all parties is a breach of contract claim based on plaintiff's HAMP modification, non-HAMP

modification, or both.  Extensive briefing has been dedicated to whether failure to make a HAMP

modification permanent may form the basis for a breach of contract claim, and multiple citations

of additional authority have been submitted to this court.  The court finds that the issue of

whether plaintiff in this case may state any claim for relief based on OneWest's failure to make

either of her modifications permanent is not appropriately decided at this stage of the litigation in

this case.  The alleged modifications have not been submitted to the court, nor have the parties

submitted any evidence regarding the regulations governing the HAMP program, therefore the

court cannot reach any conclusions as to what representations were made and what obligations

are incumbent upon the parties as a result.  In this dynamic and evolving area of law, the court

believed justice is better served by waiting until plaintiff has pled such a claim before deciding

whether plaintiff can survive a motion to dismiss or a motion seeking judgment on the merits of

her claims.

The court therefore recommends plaintiff's motion to amend be GRANTED, with the

limitation that plaintiff may not re-plead those claims she abandoned in her First Amended

Complaint.

## RECOMMENDATION

For the reasons stated above, the court recommends defendant OneWest's motion to

dismiss (#14) be DENIED IN PART AND GRANTED IN PART, and that defendant Regional's

motion to dismiss (#9) be GRANTED in its entirety. It is further recommended that plaintiff be

granted leave to amend her complaint to add all additional claims for relief to which she believes

she is entitled.

***This recommendation is not an order that is immediately appealable to the Ninth***

***Circuit Court of Appeals.*** Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

Appellate Procedure, should not be filed until entry of the district court's judgment or appealable

order.

The Report and Recommendation will be referred to a district judge. ***Objections to this***

***Report and Recommendation, if any, are due by March 2, 2011. If objections are filed, any***

***response to the objections are due by March 21, 2011.*** *See* FRCP 72, 6.

Failure to timely file objections to any factual determinations of the Magistrate Judge will

be considered a waiver of a party's right to de novo consideration of the factual issues and will

constitute a waiver of a party's right to appellate review of the findings of fact in an order or

judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this _____ day of February, 2011.

MARK D. CLARKE
United States Magistrate Judge

Page 29 - REPORT AND RECOMMENDATION