IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| DONNA JENE MEMMOTT, | Case No. 1:10-cv-03042 |
| Plaintiff, | **REPORT & RECOMMENDATION** |
| v. | |
| ONEWEST BANK, FSB, and REGIONAL TRUSTEE SERVICES CORPORATION, | |
| Defendants. | |

CLARKE, Magistrate Judge.

This matter comes before the Court on a motion to dismiss filed by defendant OneWest Bank, FSB ("OneWest") (#89). Plaintiff's Second Amended Complaint (#69) asserts claims against both OneWest under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq, as well as a claim for breach of contract, or alternatively promissory estoppel,

Page 1 – REPORT & RECOMMENDATION

against OneWest. OneWest moves to dismiss the claims against it pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6), asserting that plaintiff fails to allege facts sufficient to state a claim for relief. The exception is plaintiff's claim under the FDCPA against OneWest for failing to report to the credit reporting agencies that the plaintiff disputed a portion of her debt - this claim is not at issue in this motion, and remains in the case. Plaintiff previously asserted claims against Regional Trustee Services Corporation, but voluntarily dismissed that defendant from the case after the current motion to dismiss was filed by OneWest (see docket #98, 99). For the reasons below, the Court recommends OneWest's motion to dismiss (#89) be DENIED, except as to one claim, which the plaintiff has conceded.

## INTRODUCTION

The U.S. Department of the Treasury, acting under the direction of Congress, launched the Home Affordable Modification Program ("HAMP") in 2009 to help distressed homeowners with delinquent mortgages, but as the Ninth Circuit recently noted, the program seems to have created more litigation than it has happy homeowners. Corvello v. Wells Fargo Bank, NA, 728 F.3d 878, 880 (9th Cir. 2013), as amended on reh'g in part (Sept. 23, 2013). Corvello represented a sea change with respect to the issue of whether a lender is contractually obligated to offer a borrower a permanent mortgage modification after the borrower complies with the requirements of a trial period plan (TPP). In that case, the Ninth Circuit determined that the district court "should not have dismissed the plaintiffs' complaints when the record showed that the bank had accepted and retained the payments demanded by the TPP, but neither offered a permanent modification, nor notified plaintiffs they were not entitled to one, as required by the terms of the TPP." Id.

The Court disagrees with OneWest that the Plaintiff's Amended Complaint is a mere re-hashing of the claims she originally pled. The Court agrees with OneWest, however, that all of the Plaintiff's claims must sink or swim with the question of whether she can base her action on OneWest's alleged violation of the TPP. Because the TPP is a valid contract, and the plaintiff has sufficiently alleged that OneWest violated that contract, OneWest's motion should be denied.

## STANDARD

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief may be granted. In order to state a claim for relief, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001)).

Dismissal under Rule 12(b)(6) is proper "if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Id. (quoting Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating a motion to dismiss, the court must accept the allegations of material fact as true and construe those allegations in the light most favorable to the non-moving party. Odom v. Microsoft Corp., 486 F.3d 541, 545 (9th Cir. 2007) (internal citations omitted). In deciding a

Rule 12(b)(6) motion, the court may also consider documents attached to the pleading without converting the motion into one for summary judgment. See Fed.R.Civ.P. 10(c).

## BACKGROUND

### I. HAMP

The Home Affordable Modification Program ("HAMP") was created under the Emergency Economic Stabilization Act, 12 U.S.C. § 5201 (2008) ("EESA"), in an effort to help homeowners avoid foreclosure by restructuring or refinancing their home loans. See U.S. Treasury's HAMP Supplemental Directive 09-01 ("SD 09-01"). The Obama Administration published detailed program guidelines for HAMP in March 2009. Id. at 1. Under HAMP, borrowers who are in or at risk of default or foreclosure can apply to have their loans modified to a more affordable monthly payment of not more than 31 % of their gross monthly income. See id. at 2, 6. Servicers of loans owned or guaranteed by Fannie Mae or Freddie Mac are obligated to participate in HAMP. Id. at 1.

Where a borrower qualified for a HAMP loan modification, the modification process itself consisted of two stages. After determining a borrower was eligible, the servicer implemented a Trial Period Plan (TPP) under the new loan repayment terms it formulated using the method specified by the guidelines. The trial period under the TPP lasted three or more months, during which time the lender "must service the mortgage loan . . . in the same manner as it would service a loan in forbearance." Id. at 1. After the trial period, if the borrower complied with all terms of the TPP Agreement—including making all required payments and providing all required documentation—and if the borrower's representations remained true and correct, the servicer had to offer a permanent modification. See id. at 1. ("If the borrower complies with the

terms and conditions of the Trial Period Plan, the loan modification will become effective on the first day of the month following the trial period....").

Treasury modified its directives on the timing of the verification process in a way that affects this case. Under the original guidelines that were in effect when the plaintiff applied for a modification, a servicer could initiate a TPP based on a borrower's undocumented representations about her finances. See id. at 1. ("Servicers may use recent verbal [sic] financial information to prepare and offer a Trial Period Plan. Servicers are not required to verify financial information prior to the effective date of the trial period."). Those guidelines were part of a decision to roll out HAMP very quickly.

## II.     Facts

The facts of this case have been detailed extensively in this Court's prior Report and Recommendation on the first motions to dismiss. While the Plaintiff has filed a Second Amended Complaint, the factual allegations remain essentially the same. Plaintiff fell behind in her mortgage payments due to a battle with cancer, and sought modifications for both her mortgages from defendant OneWest, her loan servicer. On July 1, 2009, plaintiff and OneWest entered into a Home Affordable Modification Program ("HAMP") trial modification one of her properties (Parcel 1). Plaintiff and OneWest entered into a non-HAMP trial modification for her other property (Parcel 2). The parties agree that the claims in this case rest on the TPP from the HAMP trial modification due to a cross default provision in the non-residential trust deed.

Plaintiff complied fully with the terms of both modifications, which included submitting documentation and financial information, as well as making a series of timely payments under the terms of the TPP. However, OneWest rejected plaintiff's third payment under the TPP on September 1, 2009, with a letter informing plaintiff that her check for $792.62 did not represent

the full amount due. Plaintiff spoke with one of OneWest's agents, seeking an explanation for why the payment was rejected. She was told that the information in OneWest's computer system provided no reason for the rejection. Plaintiff subsequently received a letter dated September 3 stating her modification request could not be accommodated. Plaintiff again called and spoke to a OneWest agent, and was informed that Parcel 1 would be sold at foreclosure on October 2, 2009, unless she paid the full amount due, $8,441.60 plus attorneys' fees and costs. She was further advised that the non-HAMP modification for Parcel 2 would not be made permanent nor would any future payment insufficient to bring the loan current be accepted.

Plaintiff and her husband thereafter repeatedly telephoned and wrote to OneWest requesting OneWest honor the modification agreements, which OneWest declined to do. During this time OneWest reported information regarding the status of plaintiff's loans to the national credit reporting agencies, which plaintiff alleges falsely represented the number of months the loans were past due, and the amount delinquent on each loan. Plaintiff also claims that OneWest failed to report portions of the debt as disputed, although that claim is not at issue here.

Despite the protests of plaintiff and her husband, Regional commenced non-judicial foreclosure proceedings on both mortgages in early July, 2009. Plaintiff filed Chapter 13 bankruptcy for the sole purpose of stopping the foreclosure.

## DISCUSSION

### I.   Breach of contract claim

District courts in this circuit have held that, in general, HAMP does not authorize a private right of action against participating lenders. See, e.g., Vida v. OneWest Bank, 2010 WL 5148473 (D. Or. Dec. 13, 2010). However, The Ninth Circuit has recently held that a TPP entered into by a loan servicer and borrower is an enforceable contract under state common law,

notwithstanding the fact that HAMP guidelines do not provide a federal private cause of action. Corvello, 728 F.3d 878. In so doing, the court relied on the holding and reasoning from a similar Seventh Circuit case, Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 556 (7th Cir. 2012), which also held that an executed TPP, with the same terms, was a valid contract that required the loan servicer to offer a borrower a loan modification as long as the borrower complied with the requirements of the plan and her financial information remained true and accurate. The first line of the TPP, in the case at bar as well as in Corvello and Wigod, states:

> If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Home Affordable Modification Agreement . . . as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.

TPP, 1.

OneWest acknowledges that, based on the cases above, "a TPP is generally a valid contract with sufficient consideration and a sufficiently definite promise that, under certain circumstances, a loan servicer must offer a borrower a permanent modification." Def. Reply, 3. OneWest contends that the servicer must do so only "if both of the following conditions are met: (1) the borrower complies with the TPP by submitting accurate documentation and making the required three payments; and (2) the servicer fails to timely notify the borrower that he or she is not entitled to a permanent modification." Id. OneWest claims that the Plaintiff has failed to allege the second condition because she admits that OneWest rejected her third payment and sent a letter notifying her that she did not qualify for a modification. OneWest relies on the following language from Corvello:

> The district court should not have dismissed the plaintiffs' complaints when the record before it showed that the bank had accepted and retained the payments demanded by the TPP, but

Page 7 – REPORT & RECOMMENDATION

> neither offered a permanent modification, nor notified plaintiffs they were not entitled to one, as required by the terms of the TPP.

728 F.3d at 880. Thus, OneWest claims that the rejected payment and letter were sufficient notice of ineligibility. As other courts have held, however, "this argument misstates the holding of Corvello, which found that if a borrower is ineligible for a permanent modification under HAMP, the servicer must notify plaintiff of her ineligibility *before* entering the TPP and accepting trial payments." Karimian v. Caliber Home Loans Inc., 2:13-CV-07034-CAS, 2013 WL 5947966 (C.D. Cal. Nov. 4, 2013) (emphasis in original).

This holding accords with the court's decision in Wigod as well, which held that, by signing and returning the TPP, the bank "communicated to [the plaintiff] that she qualified for HAMP and would receive a permanent 'Loan Modification Agreement.'" 673 F.3d at 562. Like the bank in Wigod, OneWest claims that its obligation to modify the plaintiff's mortgage was contingent on its determination, after the trial period began, that she qualified under HAMP guidelines. As in Wigod, however, "that theory conflicts with the plain terms of the TPP." Id. The TPP states:

> If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment and documents to permit verification of all of my income. . . I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer.

TPP, 1. This Court agrees with the Seventh Circuit that, under the terms of the TPP, "that moment" before countersigning was OneWest's opportunity to determine whether the plaintiff qualified. See Wigod, 673 F.3d at 562. If she did not, it could have and should have denied her a modification on that basis. Instead, OneWest countersigned the TPP and returned it to her on July 1, 2009.

To state a claim for breach of contract under Oregon law, a "plaintiff must allege the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach and defendant's breach resulting in damage to plaintiff." Arnett v. Bank of Am., N.A., 874 F. Supp. 2d 1021, 1029 (D. Or. 2012) (quoting Slover v. Oregon State Bd. of Clinical Soc. Workers, 144 Or.App. 565, 570, 927 P.2d 1098 (1996)). Here, plaintiff has alleged that the TPP was a valid contract, that she fully complied with the terms of that contract, and that OneWest's breach resulted in foreclosure. She therefore sufficiently states a claim for relief.

## II. Other claims

Plaintiff has conceded that the portion of her FDCPA claim alleged in paragraph 30 of the Second Amended Complaint based on Hooker v. Northwest Trustee Services, Inc., CIV. 10-3111-PA, 2011 WL 2119103 (D. Or. May 25, 2011) is no longer viable in light of subsequent Oregon Supreme Court decisions. Plf. Response, 2 n.1. Therefore this claim should be dismissed.

OneWest's motion to dismiss plaintiff's other FDCPA claims, however, rests in large part on its theory that rejecting her third TPP payment and resuming foreclosure was not wrongful. However, as discussed above, the plaintiff has sufficiently alleged that this conduct was in fact a breach of contract. OneWest also contends that the claims fail under the rule of Hulse, which is that no FDCPA claim can lie for conduct necessary to foreclosure. Hulse v. Ocwen Fed. Bank, FSB, 195 F. Supp. 2d 1188 (D. Or. 2002). This argument also fails. The letter sent to the plaintiff on September 1, 2009 stated that OneWest was "returning your certified check . . . as the amount received does not represent the total amount due at this time. Please contact our office immediately for the amount required to bring your loan current." The disclaimer at the bottom of the letter stated even more explicitly:

(FOR CERTAIN LOANS WE SERVICE WE ARE REQUIRED BY FEDERAL LAW TO INFORM BORROWERS THAT WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.)

Such attempt at debt collection is not "necessary to effectuate foreclosure" and is not protected by the rule of Hulse. Therefore, OneWest's motion to dismiss these claims should also be denied.

## RECOMMENDATION

For the reasons stated above, the court recommends defendant OneWest's motion to dismiss (#89) should be DENIED, except as to plaintiff's FDCPA claim alleged in paragraph 30 of the Second Amended Complaint, which should be dismissed as conceded.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.

This Report and Recommendation will be referred to a district judge. Objections to this Report and Recommendation, if any, are due fourteen (14) days from the date of this opinion. If objections are filed, any response to the objections are due fourteen (14) days after the date of the objections. See FRCP 72, 6. Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED this 20 day of December, 2013.

_____
MARK D. CLARKE
United States Magistrate Judge